**ORDERED.**

**Dated: August 31, 2023**

Jacob A. Brown
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:

KRISTEN ADAMS

Case No.: 3:22-bk-02431-JAB
Chapter 7

Debtor.
______________________________/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Case is a cautionary tale and illustrates why honesty and disclosure are *essential* cornerstones of the bankruptcy process.[1] When parties make representations to the Court those representations have both *meaning* and *consequence*.

The Debtor's failure to honor her representations and commitments that she made on the record in open court is what led to the August 22, 2023 hearing on the *Order to Show Cause*

[1] The *Order Denying with Prejudice Debtor's Second Amended Motion for Reconsideration of Order Dated May 23, 2023, Overruling Debtor's Amended Objection to Proof of Claim 8-1* filed by Fidus Roofing and Construction, LLC ("Fidus") is incorporated into this Order for the purpose of providing additional background about the Debtor's actions throughout this Case and further support as to why the Court is dismissing this Case with prejudice. (Doc. 276).

*why Sanctions Should not be Imposed Against the Debtor* (the "Order to Show Cause").[2] For the reasons set forth herein, the Court will dismiss the Debtor's Case with prejudice, subject to various terms and conditions.[3]

**Findings of Fact**

Almost 9 months ago, the Debtor voluntarily filed this Case under Subchapter V of Chapter 11 of the Bankruptcy Code. At a minimum, this Case is the Debtor's 5th voluntary bankruptcy case.[4]

Despite the Debtor's failure to propose a confirmable plan, which led to the Case being converted to Chapter 7, there are almost 300 docket entries in the Case. The Debtor's "ability" to create a lengthy docket, without proposing a confirmable plan, is a pattern for the Debtor and illustrated by the Debtor's previous Subchapter V Case that she filed in May of 2020 (the "2020 Case").[5] Similar to this Case, the primary dispute in the 2020 Case arose from the Debtor's more than six-year dispute with Fidus, which holds a final non-appealable judgment (the "Judgment") entered by the Duval County Court (the "State Court"), on February 3, 2021, in favor of Fidus and against the Debtor. The litigation between Fidus and

---

[2] (Doc. 265).

[3] This Order constitutes findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[4] On May 28, 2020, the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code (the "2020 Bankruptcy Case") that was closed on February 23, 2023, with 324 docket entries in the case. On November 17, 2021, the Debtor filed another voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code (the "2021 Bankruptcy Case") while the 2020 Bankruptcy Case was pending, and that case was dismissed on January 3, 2022. The docket in this Bankruptcy Case also reflects the Debtor filed a voluntary petition the Middle District of Florida for Chapter 11 bankruptcy relief, Case No. 3:14-bk-1934-JAF, on April 23, 2014, with 442 docket entries, a plan confirmed on July 30, 2015, and the case closed on July 12, 2017. The Debtor also filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of New Jersey, Case No. 92-10676-RG, on February 10, 1992 and received a discharge on July 27, 1992.

[5] Case No.: 3:20-bk-01690-JAB.

the Debtor originate from the Debtor's failure to pay Fidus the full contract price of $11,788 to replace a roof on her property located at 3526 Sheldrake Drive, Jacksonville, Florida (the "Sheldrake Property").

The docket in the 2020 Case "boasts" 324 entries and reflects numerous hearings held and orders entered by the Court. Despite the expansive amount of judicial time and resources that the Court dedicated to the 2020 Case, it was all for naught. The Court ultimately dismissed the Case because the Debtor rescinded her consent to modifications made in open court at a confirmation hearing.[6] In dismissing the 2020 Case, the Court recognized that the Debtor's choice to rescind left her with a nonconsensual plan that was not confirmable.[7] Importantly, the Court noted that the Debtor's case had been pending for almost a year and that "a plan of reorganization is the framework for the debtor's reorganization and successful exit from bankruptcy," and that a "debtor cannot wallow indefinitely in a Subchapter V case."[8]

Despite the dismissal of the 2020 Case and the Debtor being cautioned by the Court that "a Subchapter V case is intended to be an expedited process which allows 'small business debtors to reorganize quickly, inexpensively, and efficiently,'"[9] history has unfortunately repeated itself in the instant Case.

The Debtor's choices in this Case are regrettably reminiscent of the recalcitrant behavior she exhibited in the 2020 Case.[10] During the 9-month pendency of this Case there

---

[6] (2020 Case, Doc. 275).
[7] (*Id.* at p. 2).
[8] (*Id.* at p. 4) (citing *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D. N.Y. 1995)).
[9] (*Id.*, pp. 3-4) (citing *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 336 (Bankr. S.D. Fla. 2020)).
[10] In an effort for this Case to succeed, as opposed to the Debtor's two previous Subchapter V cases which were dismissed, the Court implored the Debtor on various occasions to retain

have been multiple requests to continue, two motions to recuse (which were later withdrawn), and other filings that had no basis in fact or law. Moreover, the Court, the Subchapter V Trustee (the "Sub V Trustee"), and the Chapter 7 Trustee (the "Trustee"), have collectively spent an inordinate amount of time and resources on this Case primarily because of the Debtor's repeated frivolous actions, which include her refusal to comply with requirements of the Bankruptcy Code and Court orders.[11]

On August 8, 2023, the Court entered the Order to Show Cause *sua sponte* as a result of the Debtor's "repetitive, frivolous, and vexatious filings in this Bankruptcy Case."[12] The Court also encouraged the Trustee and other interested parties to file briefs "detailing any facts or law weighing in favor of or against sanctions being imposed against the Debtor."[13] In response to the Order to Show Cause, the Trustee stated that in his professional opinion:

> the appropriate sanction would be dismissal of this bankruptcy case, so that the Debtor and Fidus may resolve their dispute outside of the Bankruptcy Court and that a two-year bar order be imposed barring the Debtor from filing any other bankruptcy proceedings under any Chapter of the Bankruptcy Code within any District or Division of the United States Bankruptcy Court.[14]

---

counsel. This is illustrated by the Court's comments at the hearing on February 22, 2023 when the Court told the Debtor, "I have told you, and I will tell you again, I think you need to get a bankruptcy lawyer that's familiar with Chapter 11. Okay? I will continue to tell you that and continue to remind you there's other resources out there for you to utilize to get legal advice, but that is – I can't say it strong enough. I think you need that." (Doc. 250, Tr. p. 14); *see also Order to Show Cause* (Doc. 265, p. 9) ("The Court notes again that it has repeatedly recommended that the Debtor seek legal counsel and again encourages her to do so prior to the August 22, 2023 hearing.").

[11] As stated by the Court at previous hearings, it is very concerning to the Court that the Debtor's original schedules and statement of financial affairs, filed under penalty of perjury, were not accurate. This includes the Debtor's failure to list the sale of a property, on October 11, 2022, for $395,000. Further, the Debtor's amended schedules (Doc. 121) still fail to account for items noted by Fidus in its Motion to Convert (Doc. 101).

[12] (Doc. 265, p. 1).

[13] (*Id.*, p. 11).

[14] (Doc. 271, p. 4).

In support of this recommendation, the Trustee stated that the Case seemed to be a two party dispute between the Debtor and Fidus and that "there appears to be little to no assets for the estate to administer for the benefit of unsecured creditors."[15] Notably, the Trustee also stated that it was his "understanding" that the Debtor was willing to consent to the dismissal of the Case with a 2-year bar against refiling in any bankruptcy court.[16] In the Debtor's Second Amended Response to the Order to Show Cause, the Debtor confirmed this by stating, "I request dismissal, with prejudice and I accept the terms the Chapter 7 Trustee is offering me."[17] Fidus also filed a response to the Order to Show Cause, which primarily focused on the Debtor's egregious litigation tactics in both the state court and bankruptcy court.[18] In its response, Fidus did not oppose the dismissal of the Debtor's case with prejudice.

As recognized by the Court at the Show Cause Hearing, the Sub V Trustee did yeoman's work trying to bring the parties together in hopes of reaching a settlement agreement. It was an endeavor that the Sub V Trustee seemed to have accomplished at the May 18, 2023, hearing when the Debtor made a clear and unequivocal agreement on the record that she was willing to drop all objections to Fidus' claim. Specifically, the Debtor stated, "[m]y goal is to be confirmed. I have – I'm willing to drop all of my objections just to make this easier for the Court. I'm just rolling over, belly up."[19] Following the Debtor's stated intention, the Court took almost an hour-long recess to allow the parties ample time to negotiate. Following the recess, it was represented to the Court that a settlement in principle

---

[15] (*Id.* at p. 3).
[16] (*Id.*).
[17] (Doc. 275, p. 5).
[18] Specifically, Fidus asserted that the effect of the Debtor's "abusive litigation tactics is to run up Fidus's fees and waste the resources of all of the courts involved." (Doc. 272, p. 7).
[19] (Doc. 184, Tr. p. 12).

had been reached.[20] Notably, after the Court was informed of the terms and spoke to each of the parties, the Court stated,

> I do want to go back over it on the record, just so we're 100 percent clear that I heard things accurately, and then also that we're clear again since there has been a lot of back and forth and history.[21]

After the Court went back over the terms on the record, it confirmed with Ms. Adams, three separate times, that "those are the terms and conditions" which she was agreeing to and that "the terms and conditions [the Court] just went through are acceptable to you."[22] In response, Ms. Adams stated "Yes, sir," and affirmatively acknowledged "[y]es, I accept them, Your Honor."[23] The Court then concluded the hearing by thanking everyone and stating, "[a]gain, I really do appreciate the work to get to this point."[24]

The Sub V Trustee's hard work and good faith efforts[25] were lost, however, when the Debtor repeated her pattern of not honoring agreements made in open court. The Court encourages mediation and parties working together to reach a settlement.[26] One key term of

---

[20] The key terms to the settlement were that Fidus would stipulate to a claim amount of $260,000 and a valuation of $335,000 on the Sheldrake Property. The Debtor also represented that if she defaulted or changed her mind as to the terms of the settlement, she would not object to the Case being converted to Chapter 7. (Doc. 184, Tr. p. 16).
[21] (*Id.* at p. 23).
[22] (*Id.* at pp. 32-34).
[23] (*Id.* at p. 34).
[24] (*Id.* at p. 39).
[25] The Sub V Trustee is owed a remaining amount of $10,000 for the work he performed in the Case. Based on the necessary skill needed and the amount of time expended by the Sub V Trustee, the Court feels this is a *very reasonable* and *fair* amount.
[26] The Eleventh Circuit has stated, "[w]e encourage parties to make liberal use of [mediation], and we encourage district courts to liberally employ any authority they have under local rules to order mediation *sua sponte* when doing so may expedite the resolution of a case." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008); *N-Tron Corp. v. Rockwell Automation, Inc.*, No. CIV.A. 09-0733-WS-C, 2010 WL 653760, at *5 (S.D. Ala. Feb. 18, 2010) ("Mediation provisions are favored in the law.").

the May 18, 2023 settlement (the "Settlement") called for conversion of the case to a Chapter 7 bankruptcy case if the Debtor defaulted or changed her mind.[27]

In reviewing the agreement of the parties on the record, the Court specifically noted that "for whatever reason, that the plan doesn't get confirmed and we have inability to get that done, or Ms. Adams, you change your mind for whatever reason, or come back [,]that you're *not* going to oppose conversion to a Chapter 7 case."[28] The record reflects that Ms. Adams unequivocally accepted this term of the Settlement. Although Ms. Adams requested clarification as to a few other terms, she did not voice one *iota* of hesitancy to the provision that the case would be converted to Chapter 7[29] if she defaulted or changed her mind as to the Settlement. As stated by the Court at the beginning of this Order, representations made by a party to the Court have both *meaning* and *consequence*.

The Debtor also squandered various opportunities she was given in this Case and the 2020 Case to propose a confirmable plan by *continuously* rehashing the validity of the Judgment held by Fidus.[30] Although the Court has observed the Debtor to be an intelligent and capable individual, the Debtor has turned a deaf ear to the Court when it has explained on numerous occasions that the bankruptcy court does not sit as an appellate court over the State Court, and that the Court *cannot* and *will no*t look behind the final, non-appealable

---

[27] (Doc. 184, Tr. p. 16).
[28] (*Id.* at p. 24, emphasis added).
[29] At a hearing on February 22, 2023, the Court cautioned the Debtor that if she was unable to confirm a plan the Case would probably be converted to Chapter 7. (Doc. 250, Tr. pp. 10, 15).
[30] The Court reminded the Debtor at the May 18, 2023, hearing that "Sub V is meant to be a quick process," with the goal of procuring a consensual plan. (Doc. 184, p. 7). The Court also expressed its dismay that despite being over five months into the Case, and the Debtor being on her fourth amended plan, there was still fighting and no consensus. *Id.*

Judgment.[31] This issue alone resulted in the derailment of the Debtor's ability to propose a confirmable Subchapter V plan and ultimately in the Case being converted to Chapter 7.

At the August 22, 2023, Show Cause Hearing, the Court acquiesced to the Debtor's request to dismiss the Case, which was supported by the Trustee, and not objected to by Fidus. The Court made very clear, however, that the dismissal was conditioned on the Debtor agreeing to certain terms. The Debtor acknowledged multiple times on the record that she agreed to the terms as announced in open court.[32] These terms include: (1) the Case will be dismissed with prejudice for two years from the date of the Order (the "Two-Year Bar Period"); (2) the Debtor will be barred during the Two-Year Bar Period from filing a petition under the Bankruptcy Code in any Court in the United States of America; (3) the Debtor will be precluded from interfering or taking any action that can be construed as attempting to frustrate Fidus' right to foreclose its Lien under the Judgment on the Sheldrake Property in State Court; (4) following the expiration of the 2-Year Bar Period, a prerequisite to filing a future petition under the Bankruptcy Code is that the Debtor must submit proof to the Court that the $10,000 administrative fees owed to the Sub V Trustee have been paid; (5) all filings to date that have not been resolved by the Court are stricken; (6) the Debtor is restricted from taking any further action in this case on a *pro se* basis, and must retain counsel who is licensed to practice in this Court; and (7) any future filings in this Case by the Debtor without the

[31] The Court in the 2020 Case also explained this rule of law to the Debtor on various occasions. *See* 2020 Case, (Doc. 275, p. 5) ("It is simply not the position of the bankruptcy court to sit in an appellate capacity over the state court.").

[32] After reviewing the terms, the Court confirmed with the Debtor that she understood everything the Court just went through on the record, to which the Debtor responded, "Yes, I do." The Court also confirmed that that Debtor heard everything it said.

signature of counsel licensed to practice in this Court will be stricken without further notice or hearing.

**Discussion**

Although the Debtor consented to the Two-Year Bar Period from the date of the dismissal order, the unfortunate record in this Case compels the Court to discuss the issue of dismissal for cause.[33]

As a starting point, the Court notes that although it understands the reasons why the Trustee supports the dismissal of the Case, such reasons do not make the Court feel more at ease with the events that have transpired. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"[34] As stated by the Court on several occasions, the Debtor has not shown herself to be honest and forthright in this Case. This is evidenced by the Debtor's failure to accurately file her schedules and statement of financial affairs, which were replete with inaccuracies including the failure to fully disclose all assets. While this is not an easy case, that is not a reason to turn a blind eye to what has clearly constituted an abuse of the bankruptcy process. Based on these considerations alone, the Court did not feel it was appropriate to immediately dismiss the Case under 11 U.S.C. § 707(a). Importantly, a debtor has no absolute right to a voluntary dismissal of a Chapter 7 case.[35] The debtor has the burden of demonstrating cause, and determining whether cause

---

[33] Pursuant to 11 U.S.C. § 349, when "cause" exists a bankruptcy court may dismiss the case with prejudice and bar subsequent bankruptcy filings. "The length of time for which the debtor is barred from refiling is committed to the discretion of the bankruptcy court." *In re Parson*, 632 B.R. 613, 627 (Bankr. N.D. Tex. 2021).

[34] *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286 (1991)) (internal quotations omitted).

[35] *In re Mercer*, No. 09-71621- JTL, 2010 WL 5209254, at *2 (Bankr. M.D. Ga. Dec. 16, 2010).

exists is within the bankruptcy court's sound discretion.[36] Notably, the Eleventh Circuit has found that a debtor's history of abuse can warrant the decision of the bankruptcy court to deny the debtor's motion under §707(a), and has specifically stated that "[w]hen dismissal will only allow the Debtor to hinder creditors, secrete assets, and further the Debtor's abuse of the system, dismissal of her voluntary petition is not warranted."[37] Because the Court continues to have concerns regarding the Debtor's veracity, it gave serious thought and consideration as to whether the Case should be dismissed and, if so, under what conditions. Ultimately, based on the agreement of the parties, the Court will dismiss the Case with prejudice pursuant to the terms and conditions as previously set forth in this Order.

The Court is also mindful that the Debtor is *pro se* and has afforded her a great deal of latitude based on that consideration alone. However, as reflected by this Case and the Debtor's former bankruptcy cases, the Debtor is a savvy litigant who is light years removed from the typical *pro se* debtor. This is the Debtor's fifth bankruptcy case and her *third* Subchapter V case under Chapter 11.[38] The Debtor's actions are indicative of an intentional misuse of the Bankruptcy Code to avoid satisfying the Judgment and resulting attorney's fees owed to Fidus due to her vexatious litigation.[39] The cumulative result is that the Debtor has made "a mockery of the bankruptcy process."[40]

---

[36] *In re Jabarin*, 395 B.R. 330, 337 (Bankr. E.D. Pa. 2008).

[37] *In re Simmons*, 200 F.3d 738, 743 (11th Cir. 2000).

[38] This is notable because Subchapter V under Chapter 11 is a relatively recent addition to the Bankruptcy Code. It was enacted on August 23, 2019, with an effective date of February 19, 2020.

[39] Although the Court is only imposing a 2-year bar, it seriously considered imposing a 3-year bar. The Debtor's actions throughout this Case have not been reflective of a legitimate intent to properly provide for the claim of Fidus and have been an "affront to the spirit of the Bankruptcy Code." *Parson*, 632 B.R. at 632.

[40] *Id.* at 631 (finding that the debtor's actions and behavior made "it exceedingly appropriate to dismiss her case with prejudice.").

**Conclusion**

Although the Debtor is certainly entitled to disagree with the Court's rulings, the ability to maintain civility is essential. As eloquently stated by the late Justice Sandra Day O'Connor, "[u]nfortunately civility is hard to codify or legislate, but you know it when you see it. It's possible to disagree without being disagreeable." The Court can only hope that the Debtor was *sincere* in her apology to the Court and will exercise decorum and restraint in the future. However, the Debtor's history of professing or agreeing to something on the record in open Court, and not honoring her word, is well documented. Considering the totality of the Debtor's actions, the Court believes it is fair and appropriate, that if the Debtor wishes to take any further action in this bankruptcy case, she must be represented by counsel admitted to practice before this Court. The Court hopes this will result in at least a modicum of civility.

The Court will enter a separate order dismissing the Case with prejudice that is consistent with the terms and conditions set forth herein.

Clerk's Office to Serve.